COMMISSIONERS of the TOWN of HERTFORD v. T. E. WINSLOW.

Where, in 1758, the owner of a certain tract of land in Perquimans. County,. "signified to the Governor and Council and Assembly, his free consent, by certificate under his hand and seal, to have 100 acres of said land laid off for a town, and 50 acres for a town common;" and thereupon an act was passed appointing directors and trustees to lay off the land into lots, &c;, and another act in 1773, to regulate said town,. &c; :: *It was held*, that this. act of the owner, together with the acts mentioned, had the effect to vest the beneficial interest in the town of Hertford, which interest the court will not permit to suffer or be defeated by any break in the office of directors, or by their being called by another name, but will recognize the present officers or appoint others, if necessary, to preserve the estate.

(*Commissioners of Bath* v. *Boyd*, 1 Ired. 196,. cited and approved.)

CIVIL ACTION for the recovery of two town lots, tried before *Albertson*, *J.*, at the Fall Term, 1873, of PERQUIMANS Superior Court.

The following is the case settled and sent up to this Court by his Honor, the presiding Judge:

The plaintiff claimed the land lying between Church street and the river, and north of the lots Nos. 151 and 15. In support of the title of the plaintiff, a private act of the Governor and Council and Assembly, ratified 28th April, 1758, entitled

"An act for establishing a town on the lands of Jonathan Phelps, on Perquimans river;" and also an act of the first session of the Assembly in the year 1773, entitled "An act for regulating the town of Hertford and for other purposes," and an act passed January 31st, 1843, entitled "An act for the better government and the regulation of the town of Hertford," were read as evidence.

The records of the directors of the town' showing that on the 13th November, 1758, one hundred and thirty-one lots were drawn in accordance with the act of Assembly of 1758, also the receipts of Jonathan Phelps for £198, in payment for 98 lots so drawn for, were introduced on the part of the plaintiffs and read as evidence.

It further appeared, in support of the plaintiffs' claim, that on the first Thursday in March, 1843, an election was held at the court house in Hertford, according to the said act of 1843, and that three of the citizens of the town were elected to act as a Board of Commissioners, who duly qualified as such in April, 1853, and the Board was then thus organized, and that annual elections have since been held for the same purpose, and that the present Board was duly chosen and organized in April, 1873.

An ancient map of the town was also introduced as evidence, but the paper attached thereto was excluded. The lands in controversy, as shown by this map, lies between lots No. 15 and 16. In 1846 the Commissioners of the town, as appears from their records, surveyed and sold lots Nos. 151, 152, 153, 154 and 155 from land that had not been drawn and sold off in town lots, and which appeared from the map to have been designated "town commons." No dedication of the land to the public for a common or commons, or any evidence pertaining thereto, was introduced, if it existed.

Plaintiffs also introduced a deed from one Jos. Parks to John Clary, of date November 15th, 1796, conveying lots 1 and 15, and all the right, title and demand *he might have* to all commons, &c., adjoining the same; also a deed from Jno.

Harvey and Wm. Skinner for lot No. 16 to John Clary, dated June 26th, 1802, and conveyances of lots No. 1, 15 and 16, regularly down to the defendant, all conveying the commons belonging or attached to said lots, either directly or by reference to preceding deeds in which said commons was conveyed.

It was in evidence that for over fifty years John Clary and his successors, owning said lots, used and occupied a warehouse situated on the river, north of lot No. 15 and close up to the float bridge ; that sometimes the whole space north of and between No. 15 and the river was enclosed and sometimes not enclosed ; that sometimes wharfage was charged by the occupants, but when resisted the charge was abandoned ; and that the public used the wharf whenever they so pleased.

There was no evidence offered that the plaintiffs ever laid claim to the wharf before the bringing of this suit, nor that their predecessors claimed the warehouse or used the commons attached to these lots other than as a part of the public as before stated. It was proved that for more than fifty years John Clary had a negro house on or near the spot whereon the defendant's store now stands, and a short distance south of this he once erected a distillery and kept it in operation for some time. Also, that the lands north of lot No. 15 was for a long time used and occupied as a fishery.

Defendant, without the introduction of any evidence, asked the Court to instruct the jury that the plaintiffs were not entitled to recover upon their own testimony.

Whereupon his Honor instructed the jury that the plaintiffs had not shown any title in themselves, as successors of the " Directors of Hertford," to lay off the town under the act of Assembly offered in evidence, and they had shown no title in themselves by possession of the property in dispute ; nor had they shown any other title in themselves in any other manner which entitled them to recover against the defendant.

Verdict and judgment for the defendant, from which plaintiffs appealed.

*Gilliam & Pruden*, for appellants.
*Smith & Strong*, contra.

READE, J. The case does not present the facts very clearly and the plaintiffs were not represented in this Court by counsel, and it may be that we have misapprehended the points intended to be presented. His Honor simply charged the jury that the plaintiff could not recover upon his own showing.

It seems that the land in controversy prior to 1758 belonged to Jonathan Phelps, and that he " signified to the Governor and Council, and Assembly his free consent by a certificate under his hand and seal to have one hundred acres of said land laid off for a town and fifty acres for a town common." And thereupon the Governor and Council and Assembly passed an act appointing " directors and trustees " to lay off the land into lots, streets, &c., reserving a portion for the court house and other public buildings, and to establish the town of Hertford. all of which seems to have been done. The effect of this act in concurrence with Phelps, who received from the " directors and trustees " the price agreed on, was to vest the estate in said directors and trustees, for the use of the town of Hertford, which, by virtue of said act, was made a corporation. *Commissioners of Bath* v. *Boyd*, 1 Ired. 196.

There have been subsequent acts recognizing the corporation and regulating it, the last of which was in 1842–'43, authorizing the Commissioners of said town to lay off and sell lots, &c., which was done.

These acts, with the concurrence of Phelps, had the effect to vest the beneficial interest, at the least, in said land in the town of Hertford. And if there has been at any time a break in the office of directors or trustees, or if the same have died, or if the officers of the town have been called by some other name, still it can make no difference, as the Court will not allow the beneficial interest of the town to suffer thereby, but will either recognize the present officers or appoint new trustees.

It appears in the case that the plaintiff offered evidence to

show that the defendant had for a long time occupied and claimed a portion of the said lands under a deed from some person. The object of proving this by the plaintiff is not stated. We at first, supposed that it might have been mis-stated, the plaintiff for the defendant who was claiming by adverse possession under color; but the case states that the defendant offered no evidence. At any rate, if the defendant has title he can show it upon another trial.

There is error. This will be certified to the end that there may be a *venire de novo*.

PER CURIAM.                              *Venire de novo.*